**FILED**

APR 13 2012

MAGISTRATE JUDGE P. MICHAEL MAHONEY
United States District Court

AO 91 (REV.5/85) Criminal Complaint                    AUSA Joseph C. Pedersen (815) 987-4444

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

v.

CASE NUMBER: 12 CR 50 0 27

RITA A. CRUNDWELL

**UNDER SEAL**

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief: From on or about September 1, 2011 to on or about March 31, 2012, at Dixon, in the Northern District of Illinois, Western Division RITA A. CRUNDWELL defendant herein:

devised and intended to devise a scheme to defraud and to obtain money from the City of Dixon, Illinois by means of materially false and fraudulent pretenses, representations, and promises, and that for the purpose of executing the aforesaid scheme to defraud and to obtain money by false and fraudulent pretenses, representations, and promises, and attempting to do so, on November 2, 2011, knowingly did cause to be transmitted by means of wire communication in interstate commerce certain signs and signals, namely, a funds transfer in the amount of $175,000 from the Federal Reserve Bank in Saint Paul, Minnesota to the Federal Reserve Bank in Cincinnati, Ohio for credit to the account ending in the numbers 7503 held in the name of the City of Dixon at Fifth Third Bank in Dixon, Illinois;

in violation of Title 18, United States Code, Section 1343. I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

Signature of Complainant
PATRICK GARRY
Special Agent, Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

April 13, 2012                                          at Rockford, Illinois
Date                                                   City and State

P. MICHAEL MAHONEY, U.S. Magistrate Judge
Name & Title of Judicial Officer                        Signature of Judicial Officer

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | Magistrate Judge |
| RITA A. CRUNDWELL | ) | P. Michael Mahoney |

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, PATRICK GARRY, being first duly sworn upon oath, depose and state:

1.     I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for the past six years. As part of my duties as an FBI Special Agent, I investigate criminal violations relating to white collar crime, including mail, wire, and bank fraud. In addition, I have received specialized training regarding the investigation of various financial offenses, assisted in such investigations, and am familiar with the types of transactions conducted by those involved in illegal activities to disguise and conceal the nature of their dealings as well as their efforts to hide the proceeds generated from these illegal activities to avoid detection.   I have participated in the execution of multiple federal search warrants.

2.     I have been assigned to the investigation into Rita A. Crundwell regarding a scheme to defraud the City of Dixon. Other FBI special agents have participated in this investigation.   I have discussed the results of their

investigation into this matter with other special agents. This affidavit is based in part upon those discussions and in part upon my own investigation and observations. This affidavit is submitted in support of a criminal complaint alleging that Rita A. Crundwell has violated Title 18, United States Code, Section 1343. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging Rita A. Crundwell with wire fraud, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. As part of my duties and responsibilities as a Special Agent with the FBI, I have been involved in an investigation concerning the activities of Rita A. Crundwell ("Crundwell") who is believed to be involved in a scheme to defraud the City of Dixon, Illinois. As part of the investigation, in late 2011, I interviewed James G. Burke in Rockford, Illinois. Burke stated the following: He is the mayor of the City of Dixon and has held that position since 1999. Rita A. Crundwell is employed as the Comptroller for the City of Dixon and has held that position since approximately the early 1980's. As Comptroller, Crundwell handles all of the finances for the City of Dixon. Crundwell's salary as Comptroller is $80,000 per year. Crundwell lives a luxurious lifestyle, has a

2

business involving horses and owns a farm where she stables approximately 150 horses. In addition to the four weeks of vacation time Crundwell receives, Crundwell took an additional 12 weeks of unpaid vacation time in 2011. In October 2011, when Crundwell was away from work, another individual employed by the City of Dixon (hereinafter "Employee A"), served as Crundwell's replacement. Employee A advised Burke that Employee A requested that Fifth Third Bank send Employee A all of the City of Dixon's bank statements. In response to Employee A's request, Employee A received a bank statement from Fifth Third Bank for an account ending in the numbers 9530 and that was addressed to "City of Dixon, P.O. Box 386, RSCDA, Dixon, Illinois 61021-0386" (hereinafter "9530 account"). P.O. Box 386 is the Post Office Box for the City of Dixon. Crundwell is in charge of picking up the mail for the City of Dixon and distributing it. One of Crundwell's relatives, who is not employed by the City of Dixon, picks up the mail for the City of Dixon at Crundwell's direction. Burke advised that because the 9530 account did not appear to be related to any legitimate business of the City of Dixon, Employee A advised Burke of the bank statement Employee A received and Burke provided a copy to me. The statement for the 9530 account for September 1, 2011 through September 30, 2011, showed three deposits for the month of September: (1) September 6, 2011 - $225,000; (2) September 13, 2011 - $210,000; and (3) September 27, 2011 -

3

$350,000. The statement also showed 84 checks totaling $360,493.13 and 40 withdrawals totaling $266,605.70 were made on the account. Burke told me that prior to Employee A showing him the bank statements, he was unaware of the 9530 account, and that none of the withdrawals from the 9530 account in September appeared to be related to any legitimate business conducted by the City of Dixon. I reviewed Fifth Third Bank records for the 9530 account for the time period of September 2011 to March 2012. Those records show that primary account holder for the account ending in 9530 is the City of Dixon, with a joint account holder listed as "RSCDA." Those records further show that Crundwell used the 9530 account to pay for her personal expenses and not for expenses related to City of Dixon. The statement for the 9530 account is mailed to City of Dixon, P.O. Box 386, Dixon, Illinois. Although the monthly bank statements for the 9530 account list the account holder as "City of Dixon, P.O. Box 386, RSCDA, Dixon, Illinois 61021-0386," the checks written on the 9530 account list the account holder as "R.S.C.D.A., C/O Rita Crundwell, P.O. Box 482, Dixon, IL 61021."

4.     Additional records obtained from Fifth Third Bank and US Bank show that the City of Dixon maintained the following accounts between September 2011 and March 2012: 1) Fifth Third Bank "Corporate Fund" account ending in the numbers 2563 ("2563 account"); 2) Fifth Third Bank "Sales Tax

Fund" account ending in the numbers 8373 ("8373 account"); 3) Midland States Bank "Capital Project Fund" account ending in the numbers 0066 ("0066 account"); 4) Midland States Bank "Motor Fuel Fund" account ending in the numbers 3675 ("3675 account"; 5) US Bank Money Market account ending in the numbers 1128 ("1128 account"); and 6) Fifth Third Bank "Capital Development Fund" account ending in the number 7503 ("7503 account").

5.    I reviewed records obtained from US Bank and that those records show that between September of 2011 and February of 2012, approximately $2,783,912 of tax funds were electronically deposited into the 1128 account, including:

| | |
|---|---|
| $1,315,828 | Municipal 1% Share of Sales Tax |
| $456,575 | Local Share of Income Tax |
| $398,285 | Non-Home Rule Sales Tax |
| $264,709 | Personal Property Replacement Tax |
| $198,017 | Motor Fuel Tax |
| $108,288 | Local Share of State Use Tax |
| $42,210 | Simplified Mun. Telecommunications Tax |

US Bank records show that the above distributions were derived from a local government investment pool called The Illinois Funds.  The total of $2,783,912 represents the City of Dixon's share of distributions made by the State of Illinois from September of 2011 through February of 2012.

6.     Between September of 2011 and February of 2012, Crundwell, in her capacity as Comptroller for the City of Dixon, caused $3,039,000 to be wired out of the 1128 account into other City of Dixon accounts, as follows:

$1,788,000  Wires into 7503 Account
$796,000  Wires into 2563 Account
$255,000  Wires into 8373 Account
$200,000  Wires into 3675 Account

7.     In order to complete the wire transfers, Crundwell called bank employees of US Bank in Springfield, Illinois and requested the amounts of the wire transfers and directed that the funds be transferred to the specified accounts. Upon receiving Crundwell's instructions for the wire transfers, US Bank employees transferred $2,839,000 in funds from the US Bank 1128 account at the Federal Reserve Bank in Saint Paul, Minnesota to the Fifth Third Bank accounts at the Federal Reserve Bank in Cincinnati, Ohio for credit to the accounts ending in the numbers 7503, 2563, and 8373, all held in the name of the City of Dixon at Fifth Third Bank in Dixon, Illinois. Those wire transfers included a wire transfer that Crundwell requested on November 2, 2011 in the amount of $175,000 from the US Bank 1128 account to the Fifth Third 7503 account. In addition, upon receiving Crundwell's instructions for the wire transfers, US Bank employees transferred $200,000 in funds from the US Bank account at the Federal Reserve Bank in Saint Paul, Minnesota to the Midland States Bank account at the Federal Reserve Bank in Effingham, Illinois for

credit to the account ending in the numbers 3675 held in the name of the City of Dixon at Midland States Bank in Dixon, Illinois.

8.      Between September of 2011 and January of 2012, Crundwell in her capacity as Comptroller for the City of Dixon, wrote checks payable to "Capital Development Fund", and caused the checks to be deposited into the 7503 Account.  These checks were drawn from various City of Dixon accounts as follows:

$950,000    Checks drawn from 2563 Account
$120,000    Checks drawn from 8373 Account
$174,253    Checks drawn from 0066 Account

9.      I reviewed Fifth Third Bank and US Bank records that show that Crundwell, in her capacity as Comptroller for the City of Dixon, caused a total of $2,522,253, in wires and checks, to be deposited into the 7503 account between September of 2011 and January of 2012.

10.     Between September of 2011 and March of 2012, Crundwell, in her capacity as Comptroller for the City of Dixon, wrote 19 checks drawn on the 7503 account, amounting to $3,558,000.00 and payable to "Treasurer."  Crundwell caused all of these checks to be deposited into the 9530 account.  Based on a review of bank statements from Fifth Third Bank, most of the City of Dixon funds that were transferred into the 9530 account were used by Crundwell to purchase personal assets including vehicles and to pay for Crundwell's personal

expenses as well as for the expenses related to her horse business. The review of Fifth Third Bank records for the 9530 account has revealed of the approximately $3,558,000 in City of Dixon funds a total of $3,311,860.25 was withdrawn from that account through checks and online withdrawals.

11.     Of the $3,311,860.25 in withdrawals between September of 2011 and March 2012, only $74,274.27 was related to the City of Dixon's operations. Based on a review of bank records and information I have been able to obtain to date, I have determined that Crundwell used the remainder of those funds to pay for her own personal and business expenses, including 1) approximately $450,000 in expenses relating to Crundwell's horse farming operations including more than $200,000 of expenses for feeding, insuring and providing veterinary care for her horses; 2) approximately $600,000 in online credit card payments for Crundwell's personal credit card accounts; and 3) vehicle purchases including a 2012 Chevrolet Silverado pickup truck for approximately $67,000 in November 2011.

12.     After I obtained the records from Fifth Third Bank showing that Crundwell had transferred $3,558,000 in City of Dixon funds to the 9530 account, I requested additional records from Fifth Third Bank and expanded the scope of my investigation. My review of those records to date shows that from July of 2006 through March of 2012, Crundwell caused $29,421,310.00 to be

8

deposited from the Capital Development Account into the 9530 Account. Crundwell also caused $794,977.43 to be deposited from various checks made payable to the "City of Dixon." During that time, the 9530 account received $20,216.08 in interest deposits. In total, Crundwell deposited $30,236,503.51 in funds belonging to the City of Dixon into the 9530 account. During this period, Crundwell paid $30,173,009.02 in checks, online payments, and other withdrawals. Of those items, I have identified only six checks, made payable to the "Sewage Fund" and "Corporate Fund," totaling $153,745.93, related to business conducted by the City of Dixon. Based on a review of bank records and information I have been able to obtain to date, I have determined that Crundwell used the remainder of those funds to pay for her own personal and business expenses, including expenses relating to Crundwell's horse farming operations and credit card payments.

13. I have also identified vehicle purchases made by Crundwell using funds fraudulently obtained from the City of Dixon including a 2009 Liberty Coach Motor Home for $2,108,000, a 2009 Kenworth T800 Tractor Truck, for $146,787, a 2009 Freightliner Truck for $140,000, a 2009 Chevrolet Silverado pickup truck for $56,646, and a 2009 Featherlite Horse Trailer for $258,698. I have also reviewed documents provided by American Express show that between January of 2007 and March of 2012, Crundwell incurred charges of over

$2,500,000on her personal credit card account. Fifth Third Bank records show that all of the $2,500,000 charges were paid by online payments from the 9530 account with City of Dixon funds. The American Express records show that between January of 2007 and March of 2012, the $2,500,000 charges included over $339,000 in charges for jewelry from various vendors, averaging over $5,380 per month.

_____
PATRICK GARRY
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO before me April 13TH, 2012.

_____
P. MICHAEL MAHONEY
United States Magistrate Judge

10