UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

**FILED**

NOV 1 4 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 50027 |
| vs. | ) | Judge Philip G. Reinhard |
| | ) | |
| RITA A. CRUNDWELL | ) | |

## PLEA AGREEMENT

1.      This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant RITA A. CRUNDWELL, and her attorneys, PAUL E. GAZIANO and KRISTIN CARPENTER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

3.      Defendant has read the charge against her contained in the indictment, and that charge has been fully explained to her by her attorneys.

4.      Defendant fully understands the nature and elements of the crime with which she has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, which charges defendant with wire fraud, in violation of Title 18, United

States Code, Section 1343. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6.     Defendant will plead guilty because she is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.     From at least as early as December 18, 1990, and continuing to April 17, 2012, defendant knowingly devised and intended to devise a scheme to defraud and obtain more than $53,000,000 from the City of Dixon, Illinois, by means of materially false and fraudulent pretenses, representations, and promises, and on November 2, 2011, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain signs and signals, namely, a funds transfer in the amount of $175,000 from the Federal Reserve Bank in Saint Paul, Minnesota, to the Federal Reserve Bank in Cincinnati, Ohio, for credit to City of Dixon's Capital Development Fund account at Fifth Third Bank in Dixon, Illinois; in violation of 18 U.S.C. § 1343.

b.     Specifically, defendant admits the following with respect to the scheme to defraud charged in the indictment:

i.     Between December 18, 1990, and continuing to April 17, 2012, defendant was employed as the comptroller for the City of Dixon, Illinois. As comptroller, defendant supervised the finances for the City of Dixon.

ii.     The City of Dixon, Illinois, maintained a money market account at US Bank ("Money Market account") into which were deposited funds representing the City of Dixon's share of various tax distributions made by the State of Illinois including the municipal 1% share of sales tax, local share of income tax, non-home rule sales tax, personal property replacement tax, motor fuel tax, local share of state use tax, and simplified municipal telecommunications tax. The City of Dixon also maintained an account named the "Capital Development Fund" at Fifth Third Bank ("Capital Development Fund account").

iii.     On December 18, 1990, defendant opened a bank account in the name of the City of Dixon, P.O. Box 386, RSCDA, Dixon, Illinois 61021-0386 at First Bank South ("RSCDA account"), and maintained the RSCDA account at First Bank South and its successor banks, Grand National Bank, Old Kent Bank and Fifth Third Bank. However, defendant did not disclose the existence of this account to the City of Dixon and exercised total control over this account.

iv.     Defendant used her position as comptroller at the City of Dixon to cause funds to be wired from the City of Dixon's Money Market account to the City of Dixon's Capital Development Fund account, as well as to various other City of Dixon accounts at Fifth Third Bank.

3

v.    Defendant wrote and signed checks on various other City of Dixon accounts and deposited those checks into the Capital Development Fund account.

vi.    After transferring funds from the Money Market account and various other City of Dixon accounts into the Capital Development Fund account, defendant wrote checks on the Capital Development Fund account made payable to "Treasurer," signed those checks as "Treasurer," and deposited those checks into the RSCDA account.

vii.    After the funds were transferred into the RSCDA account, defendant used those funds to pay for her personal and private business expenses, including expenses relating to defendant's horse farming operations, personal credit card payments, and the purchases of real estate and vehicles.

viii.    Defendant created fictitious invoices purported to be from the State of Illinois to show the auditors for the City of Dixon that the funds that defendant was fraudulently taking from the Capital Development Fund were being used for a legitimate purpose.

ix.    Defendant knew that during her period of employment with the City of Dixon, the elected officials and employees of the City had entrusted her with control over various funds belonging to the City and had provided her with significant input in the city's budgeting process. In order to conceal her fraudulent scheme and in order to facilitate the commission of the crime, defendant abused that trust. For example, defendant advised city officials that the city's budgetary shortfalls were due to the State of Illinois being late in

4

the payment of tax revenues unrelated to the fraudulent scheme, when defendant knew that part of the reason for the shortfalls was her fraudulent scheme.

        x.    In order to conceal her fraudulent scheme and prevent other employees of the City of Dixon from learning about the existence of the RSCDA account, defendant would pick up the mail for the City of Dixon, including the bank statements for the RSCDA account. Whenever defendant was on vacation, defendant asked a relative or another City of Dixon employee to pick up the mail for the City of Dixon and to separate any of her mail, including the statements for the RSCDA account, from the rest of the City of Dixon's mail.

       7.    Defendant, for purposes of computing her sentence under Guideline §1B1.2, stipulates to having committed the following additional offense:

        a.    On September 8, 2009, at Dixon, in the Northern District of Illinois, Western Division, and elsewhere, defendant knowingly conducted and cause to be conducted a financial transaction affecting interstate commerce involving the deposit of check number 9302, in the amount of $225,000, drawn on the RSCDA account at the Fifth Third Bank, into defendant's "RC Quarter Horses LLC" account ending in 4279 at the First National Bank in Amboy, Illinois ("First National Bank RC Quarter Horses account"), which financial transaction involved the proceeds of a specified unlawful activity, wire fraud, in violation of Title 18, United States Code, Section 1343, which fraud scheme is more fully described in paragraphs 6(a) and (b) of this plea agreement, knowing that such financial transaction was

designed in whole or in part to conceal the nature, location, source, ownership, and control of the proceeds of that specified unlawful activity.

b.     Specifically, defendant admits that in order to conceal the nature, location, source, ownership, and control of the proceeds of the scheme to defraud described in the indictment, defendant opened the RSCDA account on December 18, 1990, in the name of the City of Dixon. All of the checks for the City of Dixon's legitimate accounts stated clearly that they were accounts of the City of Dixon. For example, the Capital Development Fund account was identified on the checks for that account as "City of Dixon, Capital Development Fund." Every other City of Dixon account was similarly identified. The RSCDA account was a secret account and was solely controlled by defendant. Defendant was the only person authorized to withdraw money from the RSCDA account. Defendant concealed the source of the funds that she fraudulently obtained from the City of Dixon and deposited into the RSCDA account, in part, by naming the account the "RSCDA Reserve Fund" and then listing the account holder on the checks as "R.S.C.D.A., c/o Rita Crundwell" followed by her personal P.O. Box number. By causing the checks to be printed in this manner, defendant was able to write checks directly from the RSCDA account using the proceeds of her scheme to defraud the City of Dixon and conceal the nature, location, source, ownership and control of those proceeds.

c.     Defendant transferred $53,740,394 in proceeds of defendant's scheme to defraud, as described in the indictment, to the RSCDA account by writing checks from the

6

Capital Development Fund payable to "Treasurer" and then causing those checks to deposited into the RSCDA account and by diverting checks that were payable to the City of Dixon and causing them to be deposited into the RSCDA account. After the fraud proceeds were transferred into the RSCDA account, defendant either spent the proceeds directly from the RSCDA account through checks or online payments or transferred the fraud proceeds to her personal bank accounts, including the First National Bank RC Quarter Horses account, by writing checks on the RSCDA account that were payable to defendant's personal bank accounts. The First National Bank RC Quarter Horses account was opened by the defendant in the name of RC Quarter Horses, LLC. Defendant was the sole member of the RC Quarter Horses, LLC, and the only person authorized to withdraw money from the First National Bank RC Quarter Horses account.

   d.     By conducting the financial transactions in this manner, defendant was able to conceal the nature, location, source, ownership and control of the proceeds of her scheme to defraud the City of Dixon. For example, on September 8, 2009, defendant wrote a check for $150,000 drawn on the City of Dixon's Sales Tax Fund account and a check for $200,000 drawn on the City of Dixon's Corporate Fund account. Defendant deposited both checks into the Capital Development Fund account at Fifth Third Bank. Later that same day, defendant wrote a check for $350,000 payable to "Treasurer" and deposited that check into the RSCDA account. Defendant created a fictitious invoice to support the payment of $350,000 to the State of Illinois that falsely indicated that the payment was for a sewer project in the City of

7

Dixon that the State of Illinois completed. Later on September 8, 2009, defendant wrote a check drawn on the RSCDA account payable to "First National Bank, a/c #**4279" in the amount of $225,000. Defendant caused that check—check number 9302—to be deposited into the First National Bank RC Quarter Horses account. When defendant wrote check number 9302 on the RSCDA account, Fifth Third Bank was a financial institution engaged in, and the activities of which affected interstate commerce, in that, the deposits of Fifth Third Bank were insured by the Federal Deposit Insurance Corporation and Fifth Third Bank operated bank branches in 15 states, including Illinois.

   f.  Defendant wrote a check dated September 1, 2009, for $225,000 drawn on the First National Bank RC Quarter Horses account to purchase a quarter horse named Pizzazzy Lady. That check cleared the First National Bank account on September 9, 2009, and would not have cleared without the $225,000 deposit on September 8, 2009.

<b>Maximum Statutory Penalties</b>

   8.  Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

   a.  A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

8

b.     Defendant further understands that the Court must order restitution to the victim of the offense in an amount determined by the Court.

c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2012 Guidelines Manual.

b.    **Offense Level Calculations.**

## Count of Conviction

i.    The base offense level for the charged offense is 7 pursuant to Guideline § 2B1.1(a).

ii.    The base offense level for the charged offense is increased by 24 levels to level 31 pursuant to Guideline § 2B1.1(b)(1)(M) because the loss as a result of the offense was more than $50,000,000.

iii.    The base offense level for the charged offense is increased by 2 levels to level 33 pursuant to Guideline § 2B1.1(b)(10)(C) because the offense involved sophisticated means.

iv.    The base offense level for the charged offense is increased by 2 levels to level 35 pursuant to Guideline § 3B1.3 because defendant abused a position of public trust.

## Stipulated Offense

v.    The base offense level for the stipulated offense is  35 pursuant to Guideline § 2S1.1(a)(1).

vi.    The base offense level for the stipulated offense is increased by 2 levels to level 37 pursuant to Guideline § 2S1.1(b)(2)(B) because the stipulated offense constitutes a violation of 18 U.S.C. § 1956.

vii.     The government will contend that the base offense level for the stipulated offense is increased by 2 levels to level 39 pursuant to Guideline § 2S1.1(b)(3) because Guideline § 2S1.1(b)(2)(B) applies and the offense involved sophisticated laundering.  Defendant reserves the right to challenge this adjustment.

## Grouping

viii.    Pursuant to Guideline §§ 2S1.1, comment. (n.6) and 3D1.2(c), the charged and stipulated offenses are grouped as closely related counts, and, pursuant to Guideline § 3D1.3, the government will contend that the offense level applicable to the charged and stipulated offenses is 39, the higher offense level of the offenses in the group. The defendant will contend that the offense level applicable to charged and stipulated offenses is 37, the higher offense level of the offenses in the group.

## Acceptance of Responsibility

ix.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

x.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government will contend that the anticipated offense level is 36, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 188 to 235 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. The defendant will contend that the anticipated offense level is 34, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 151 to 188 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.     Defendant and her attorneys and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that this Agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.     Both parties are free to recommend whatever sentence they deem appropriate.

13

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

13.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to the City of Dixon, Illinois is $53,740,394, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

**Forfeiture**

17.     The indictment charges that defendant is liable to the United States for $53,740,394, which funds are subject to forfeiture because those funds constitute proceeds of or were involved in the violation alleged in the indictment. Further, defendant has subjected real and personal property to forfeiture, namely:

a.     the single family residence located at 1679 U.S. Route 52, Dixon, Illinois;

b.     the horse farm property located at 1556 Red Brick Road, Dixon, Illinois;

c.     a single family residence located at 1403 Dutch Road, Dixon, Illinois;

d.     approximately 80 acres of vacant land located in Lee County, Illinois with Lee County property identification number 14-09-07-100-014;

e.     a single family residence located at 821 East Fifth Street, Englewood, Florida;

f.     a 2009 Liberty Coach Motor Home, Model H-345, D/S, VIN 2PCV334988C711148;

g.     a 2012 Chevrolet Silverado 3500 pickup truck, white in color, VIN 1GC4K1C82CF114165;

h.     a 2012 Featherlite 40' gooseneck car trailer, model 4941, white in color, VIN 4FGB44036CC122485;

i.     a 2005 Chevrolet Silverado, black in color, VIN 1GCEK19T65E210034;

j.     a 2009 Featherlite Horse Trailer, white in color, VIN 4FGB143339C113479;

k.     a 2010 GMC Terrain, gold in color, VIN 2CTFLJEW0A6298888;

l.   a 2009 Kenworth T800 Tractor Truck, white in color, VIN 1XKDD49X89J257500;

m.   a 2009 Heartland Cyclone 3950 5th Wheel Trailer, VIN 5SFCF40319E050819;

n.   a 2005 Ford Thunderbird Convertible, black in color, VIN 1FAHP60A75Y109211;

o.   a 2009 Chevrolet Silverado Pickup Truck, white in color, VIN 1GCHK63699F160081;

p.   a 2004 Elite Horse Trailer, white in color, VIN 5MKG172740005113;

q.   a 2009 Eliminator Trailer, white in color, VIN 5NHUEL9389N065953;

r.   a 2010 Elite Trailer, aluminum in color, VIN 5MKWG4535A0011663;

s.   a 2007 Chevrolet Silverado 3500 Pickup Truck, white in color, VIN 1GCJK33D57F128224;

t.   a 2009 Freightliner Truck, white in color, VIN 1FVAC4CV89HAG9773;

u.   a 1967 Chevrolet Corvette Roadster, VIN 194677S103054;

v.   a 2000 20' Playbuoy Pontoon Mfg. Pleasure Boat, VIN DVN31584A000;

w.   a 2004 Featherlite 6- Horse Trailer, VIN 4FGL042364C065901;

x.   a 2004 Featherlite 4-Horse Bumper Pull Trailer, VIN 4FGL028334C065902;

y.   a 2007 John Deere Model XUV 6201 Gator/Utility Vehicle, VIN M0XUVGX013939;

z.   a 2007 John Deere Model XUV 850 Gator/Utility Vehicle, VIN M0XUVDX011774;

aa.    a 2007 John Deere Model 757 Z-Track 60" mower, VIN TC0757B065562;

bb.    a 2009 John Deere Model 5065E Tractor, VIN PY5065U000357;

cc.    a 2011 John Deere Model X324 Riding Mower, VIN 1M0X324APBM182766;

dd.    a1998 Cobalt 25 LS Deck Boat, VIN FGE5S004I798;

ee.    $191,357.75 seized from the RSCDA account on April 17, 2012; and

ff.    $33,540.82 seized from account xxx79 at The First National Bank, Amboy, Illinois on April 17, 2012;

because that property constitutes proceeds of or was derived from proceeds of the violation alleged in the indictment. By entry of a guilty plea to the indictment, defendant acknowledges that the property identified above is subject to forfeiture.

18.    Defendant agrees to the entry of a forfeiture judgment in the amount of $53,740,394, and against the property identified above, in that this property is subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership she has in the above-described funds and property and further agrees to the seizure of these funds and property so that these funds and property may be disposed of according to law.

19.    Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

20.     Defendant further acknowledges that beginning on or about April 17, 2012, administrative forfeiture proceedings were commenced against certain property, including the property identified in the Amended Bill of Particulars and Second Bill of Particulars filed by the United States on November 6, 2012. Defendant relinquishes all right, title, and interest she may have in this property and understands that declarations of forfeiture have been or will be entered, extinguishing any claim she may have had in the seized property.

21.     Defendant further acknowledges that on or about June 14, 2012, a civil complaint was filed against certain property, including 401 quarter horses and 21 embryos, 13 saddles and frozen stallion semen, alleging that this property was subject to forfeiture. (Civil Action No. 12 CV 50153). Defendant relinquishes all right, title, and interest she may have in this property and further agrees to the entry of a judgment against her, extinguishing any interest or claim she may have had in the property subject to forfeiture.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

22.     This Agreement is entirely voluntary and represents the entire agreement between the Acting United States Attorney and defendant regarding defendant's criminal liability in case 12 CR 50027.

23.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or

cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

24.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant.

## Waiver of Rights

25.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against her, and if she does, she would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorneys would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

      iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorneys would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

20

      viii.    With respect to forfeiture, defendant understands that if the case were tried before a jury, she would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

      b.    **Appellate rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

      c.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorneys have explained those rights to her, and the consequences of her waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

26.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21

27.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

28.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

22

29.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

30.     Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

a.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

b.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure to the Internal Revenue Service of documents, testimony, and related investigative materials that may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the IRS for use in civil or administrative proceedings or investigations, rather than returning them to the third parties

for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant.

31.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant which directly or indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request.

32.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

## Conclusion

33.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

34.    Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

35.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

36.    Defendant and her attorneys acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

37.    Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorneys. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _____11-14-2012_____


_____
GARY S. SHAPIRO
Acting United States Attorney

_____
RITA A. CRUNDWELL
Defendant


_____
JOSEPH C. PEDERSEN
Assistant U.S. Attorney

_____
PAUL E. GAZIANO
Attorney for Defendant


_____
KRISTIN CARPENTER
Attorney for Defendant


26