```
1              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
2                      WESTERN DIVISION.

3    UNITED STATES OF AMERICA, ) Docket No. 12 CR 50027
                               )
4           Plaintiff,         ) Rockford, Illinois
                               ) Wednesday, November 14, 2012
5           v.                 ) 9:00 o'clock a.m.
                               )
6    RITA A. CRUNDWELL,        )
                               )
7           Defendant.         )

8
                      REPORT OF PROCEEDINGS
9         BEFORE THE HONORABLE PHILIP G. REINHARD

10
     APPEARANCES:
11
     For the Government:  HON. GARY S. SHAPIRO
12                        Acting United States Attorney
                          (327 S. Church Street,
13                         Rockford, IL  61101) by
                          MR. JOSEPH C. PEDERSEN
14                        MR. SCOTT PACCAGNINI
                          Assistant U.S. Attorneys
15
     For the Defendant:  MR. PAUL E. GAZIANO
16                       MS. KRISTIN J. CARPENTER
                         Federal Defender Program
17                       (202 W. State Street,
                          Suite 600
18                        Rockford, Illinois 61101)

19   Also Present:       MS. TRACI FEGRE
                         Pretrial Services
20
     Court Reporter:     Susan G. Bloom
21                       7757 Somerset Drive,
                         Marengo, Illinois  60152
22                       (815) 923-4104

23

24

25
```

1    THE CLERK:  12 CR 50027, USA v. Rita
2  Crundwell.
3    MR. PEDERSEN:  Good morning, Your Honor.  Joe
4  Pedersen and Scott Paccagnini on behalf of the United
5  States.
6    THE COURT:  Good morning.
7    MR. GAZIANO:  Good morning, Your Honor.  Paul
8  Gaziano and Kristin Carpenter of the Federal Defender
9  Program here on behalf of Ms. Crundwell, who stands
10  to my right.
11    THE COURT:  All right.  Good morning.
12    This matter is set for a status, and I
13  see a plea agreement on my desk, and there was one on
14  my, a draft on my desk this morning when I returned
15  from vacation, so I presume that that's what's going
16  to happen.  The matter is going to be a plea of
17  guilty this morning.
18    MR. PEDERSEN:  That's correct, pursuant to
19  the plea agreement.
20    THE COURT:  All right.  Now, I know the
21  Marshals Office has said something to people who've
22  come in to attend this proceeding, make sure that
23  there's no device that anyone has that's on to record
24  or to record any of the proceedings or to photograph
25  or video any part of the proceedings.  In addition,

1   all cell phones must be turned off.  I don't want to

2   be interrupted during the course of this proceeding.

3   So, with that, people have been warned, and the

4   Marshals Office will take appropriate action if

5   something happens in contrary to my order.

6              Bear with me just a minute.  I haven't

7   been here for a couple weeks, and so I have to get

8   materials before me relating to this matter.

9   (Brief pause.)

10             THE COURT:  All right.  I'm ready to proceed.

11             This is her first appearance on the

12  criminal matter before me?  I think it is.

13             MR. GAZIANO:  Actually, I think we had an

14  appearance back in -- well, that was --

15             THE COURT:  It could have been on the civil

16  end of it.

17             So, you are Rita Crundwell; is that

18  correct?

19             DEFENDANT CRUNDWELL:  Yes, Your Honor.

20             THE COURT:  This matter has been set today

21  for a plea of guilty, if that's what you choose to do

22  in this case.  I just want to make sure before I

23  start the plea proceeding that that's what you intend

24  to do this morning; is that correct?

25             DEFENDANT CRUNDWELL:  Yes, Your Honor.

1          THE COURT:  You have discussed this, I would

2    presume, thoroughly with your lawyers in the case?

3          DEFENDANT CRUNDWELL:  Yes.

4          THE COURT:  And this also includes a

5    forfeiture allegation in the indictment, and that

6    forfeiture allegation would be admitted as well; is

7    that correct?

8          DEFENDANT CRUNDWELL:  Yes, Your Honor.

9          THE COURT:  I have looked over the draft plea

10   agreement that had been placed on my desk this

11   morning, and I have a couple questions before we

12   proceed with the normal plea proceeding.

13              First of all, I'll address Mr. Pedersen.

14   There is stipulated conduct as I saw in Paragraph 7

15   of the plea agreement; is that correct?

16         MR. PEDERSEN:  That's correct.

17         THE COURT:  And I'm also aware just by

18   reading the newspapers that there's a matter pending

19   in state court, I guess is that Lee County?

20         MR. GAZIANO:  That's Lee County.

21         THE COURT:  Is any of the stipulated conduct

22   or relevant conduct a part of the allegations in the

23   state proceeding?

24         MR. PEDERSEN:  I believe that all the counts

25   of theft that are alleged against her in Lee County

1   are the same conduct that is alleged to have occurred

2   throughout the scheme of fraud in this case.

3           THE COURT:  All right.  I'm just trying to --

4   ultimately, at the sentencing hearing, you're going

5   to ask me to consider conduct that is before a judge

6   in the state court.

7           MR. GAZIANO:  No.

8           MR. PEDERSEN:  Well, the scheme to defraud

9   that's alleged in the indictment began in 1990 and

10  went all the way through to her arrest.  The Lee

11  County State's Attorney's Office has filed charges

12  against her relating to, I believe, a shorter time

13  period, maybe a two-year period.  I'm not -- I don't

14  remember the exact dates.

15          THE COURT:  But that conduct you're going to

16  ask that I consider ultimately if she pleads guilty

17  in the sentencing in this case.  Is that correct or

18  not?

19          MR. PEDERSEN:  It's all -- the scheme to

20  defraud encompasses all the money she took.  They've

21  alleged that she took a portion of that money, so

22  ultimately, I guess, yes.

23          THE COURT:  All right.  That's what I'm

24  trying to figure out.  I want her to be clear on

25  that, too.

1        Mr. Gaziano, I'll ask you this.  You're

2   not her counsel in the state court proceeding.

3        MR. GAZIANO:  We are not, Your Honor.

4        THE COURT:  And do you anticipate, at least

5   at this point, that might be disposed of before her

6   sentencing hearing in this case?

7        MR. GAZIANO:  Judge, I have no way of knowing

8   the answer to that.

9        THE COURT:  All right.  One other point that

10  I wanted to raise in looking at the plea agreement.

11  The statutory penalty here, and I'll explain this

12  more fully at the time during the course of the plea

13  proceeding, but the statutory penalty is a maximum

14  sentence of 20 years, which is for wire fraud.  Is

15  that an offense that is a Class C felony?

16       MR. PEDERSEN:  Correct.

17       THE COURT:  Is that one that's probational or

18  not?

19       MR. PEDERSEN:  Yes.

20       THE COURT:  All right.  I didn't see that in

21  the plea agreement.  I want to make it clear that

22  while it may be probational, there's little

23  likelihood that she would get probation.

24       Do you understand that?

25       DEFENDANT CRUNDWELL:  Yes, sir.

1          THE COURT:  I've looked at the guidelines,

2   and the guidelines are significant as far as the

3   period of imprisonment.  But you didn't have it in

4   there that she was eligible for probation, but I

5   wanted to let you know that, while eligible, could be

6   little likelihood of that.

7               Do you wish to proceed then with the

8   proceeding as it relates to both the indictment that

9   charges a criminal offense and as to the forfeiture

10  provision?  The procedure that I'll be using is that

11  I will put you under oath, I'll ask you questions.

12  You must -- my questions are designed so that I know

13  that you're aware of all the rights that you would be

14  giving up as far as pleading guilty, and that you do

15  that knowingly and voluntarily, and that if you gave

16  me an untruthful answer to any of my questions, the

17  government could prosecute you for perjury.

18               If you don't understand a question just

19  stop me, and I'll try to explain it.  If you want to

20  talk with Mr. Gaziano at any point in time, just ask

21  me, and I'll allow you to do so.  Do you understand?

22          DEFENDANT CRUNDWELL:  Yes.

23          THE COURT:  Raise your right hand.

24      (Defendant duly sworn.)

25          THE COURT:  All right.  Give me your full

1   name.

2          DEFENDANT CRUNDWELL:  Rita A. Crundwell.

3          THE COURT:  And how old are you?

4          DEFENDANT CRUNDWELL:  59.

5          THE COURT:  And do you still currently reside

6   in Lee County?

7          DEFENDANT CRUNDWELL:  No, sir.

8          THE COURT:  You reside in Illinois?

9          DEFENDANT CRUNDWELL:  No, sir.

10         THE COURT:  You've been given permission by

11  the probation office to establish some other

12  residence; is that correct?

13         DEFENDANT CRUNDWELL:  Yes, Your Honor.

14         THE COURT:  Prior to that, I take it you were

15  a resident of Illinois.

16         DEFENDANT CRUNDWELL:  Yes.

17         THE COURT:  How far did you go in school?

18         DEFENDANT CRUNDWELL:  High school.

19         THE COURT:  And was that Dixon High School?

20         DEFENDANT CRUNDWELL:  Yes, sir.

21         THE COURT:  And, at the present time, are you

22  taking any medications?

23         DEFENDANT CRUNDWELL:  Yes, sir.

24         THE COURT:  What are you taking those for

25  might I ask?

1    DEFENDANT CRUNDWELL:  Blood pressure, and I
2  have a bad back.
3    THE COURT:  All right.  Pain medication.
4    DEFENDANT CRUNDWELL:  Yes.
5    THE COURT:  Is that, the taking of those
6  medications, and you've taken them today --
7    DEFENDANT CRUNDWELL:  Yes, sir.
8    THE COURT:  -- is that in any way causing you
9  to be, let's say, cloudy or unclear about what I'm
10  talking to you about today?
11    DEFENDANT CRUNDWELL:  No, sir.
12    THE COURT:  You're fully alert as far as you
13  are concerned; is that correct?
14    DEFENDANT CRUNDWELL:  Yes, sir.
15    THE COURT:  Have you ever been in a hospital
16  or under a doctor's care for any mental condition?
17    DEFENDANT CRUNDWELL:  No, Your Honor.
18    THE COURT:  All right.  I'll find she's
19  competent to proceed today.
20    Have you had enough time to talk with
21  Mr. Gaziano and Ms. Carpenter about this case?
22    DEFENDANT CRUNDWELL:  Yes, Your Honor.
23    THE COURT:  And have you told them everything
24  you know about the charges against you?
25    DEFENDANT CRUNDWELL:  Yes, sir.

1         THE COURT:  And you've discussed with them

2  whether you wish to go to trial on this case or plead

3  guilty.

4         DEFENDANT CRUNDWELL:  Yes, sir.

5         THE COURT:  And you're satisfied with their

6  advise and efforts as your attorney.

7         DEFENDANT CRUNDWELL:  Yes, sir.

8         THE COURT:  And has any other attorney other

9  than Ms. Carpenter and Mr. Gaziano given you legal

10  advice in this case that you're relying on?

11         DEFENDANT CRUNDWELL:  No, Your Honor.

12         THE COURT:  Now, when I'm going to advise you

13  of your rights, I'm advising you of your rights as to

14  the criminal charge against you, but those rights

15  also, in most part, will apply to the allegation of

16  forfeiture.  Do you understand that?

17         DEFENDANT CRUNDWELL:  Yes, sir.

18         THE COURT:  In other words, I'll explain to

19  you what trial rights you have, and those apply as

20  well to the forfeiture in this case.  Do you

21  understand?

22         DEFENDANT CRUNDWELL:  Yes, sir.

23         THE COURT:  I'm going to go over the

24  indictment with you.  The indictment charges you with

25  wire fraud, and I have to explain to you the material

1    elements of that charge and what the government must

2    prove beyond a reasonable doubt.  The indictment

3    charges that at one time, you were employed as the

4    comptroller for the City of Dixon, you handled

5    finances for the City of Dixon, and that the City of

6    Dixon maintained a money market account, and that,

7    and that account, the funds were deposited in that

8    account representing certain monies that were

9    deposited for the trust of the City of Dixon, which

10   would include various taxes distributions made by the

11   State of Illinois and other taxes, and that the City

12   of Dixon also maintained an account called a Capital

13   Development Fund, and that was at a particular bank

14   as was the other money market account.

15            The indictment further charges that

16   beginning at least as early as December 18, 1990, and

17   continuing to on or about April 17, 2012, in Dixon,

18   in the Northern District of Illinois, Western

19   Division, you knowingly, and it's important the

20   government has to allege the dates that I've just

21   given you, and that they have to allege and prove

22   that you knowingly devised and intended to devise a

23   scheme to defraud and obtain money from the City of

24   Dixon by means of making material false and

25   fraudulent representations.  And the scheme that is

1   alleged in detail in the indictment is, I'm going to
2   summarize that, but it alleges that the scheme was
3   one that you devised to obtain more than $53 million
4   from the City of Dixon, and that you had opened an
5   account in the name of the City of Dixon called the
6   RSCDA account and maintained that account apparently
7   without the knowledge of the City of Dixon officials.
8   And that you, being comptroller, were one who was in
9   charge of the other two bank accounts that I
10  mentioned, money market account and the Capital
11  Development Fund, and that as a part of the scheme,
12  when that, when the RSCDA account was opened, funds
13  were, belonging to the City of Dixon, were
14  transferred into that account, and that they were
15  used, those funds were used to pay for personal and
16  private business expenses, and that there were
17  transfers made and that they were made from
18  time-to-time over that period of approximately
19  12 years [sic], and that some of the transfers were
20  made by use of a wire, the wires, and that various
21  property was purchased by you from city funds that
22  were put into the RSCDA account.  And that you took,
23  as part of scheme, you took efforts to conceal the
24  fraudulent scheme from various other public
25  officials.

1          ` And that on or about November 2, 2011, for

2     the purposes of being part of executing the scheme

3     that I've just described, you transmitted by means of

4     a wire communication which went into interstate

5     commerce certain signals which represented a fund

6     transfer in about $175,000 from the Federal Reserve

7     Bank in St. Paul, Minnesota, to the Federal Reserve

8     Bank in Cincinnati, Ohio, for a credit to the City of

9     Dixon Capital Development Fund at the Fifth Third

10    Bank in Dixon, Illinois.

11               Those are the material allegations that

12    the government has to prove; that is, that this was

13    done knowingly, that it was a scheme that was --

14    where you made fraudulent misrepresentations, and

15    that some of the transactions occurred by use of a

16    wire communication.  Do you understand those

17    allegation?

18               DEFENDANT CRUNDWELL:  Yes, Your Honor.

19               THE COURT:  Do you have any questions about

20    that?

21               DEFENDANT CRUNDWELL:  No, sir.

22               THE COURT:  There is also a forfeiture

23    allegation that is part of the indictment, and that

24    forfeiture allegation list appears to me like

25    probably twenty plus items that the government seeks

1    to forfeit.  They're saying that these items were

2    derived from the fraudulent transactions that I've

3    just described as far as the criminal charge, and

4    that these items that they seek to forfeit are both

5    real estate and personal property.  You understand

6    that as well.

7              DEFENDANT CRUNDWELL:  Yes, Your Honor.

8              THE COURT:  And you understand that is

9    separate, it's a part of the indictment, but it's

10   actually a separate proceeding of forfeiture that if

11   you were convicted of the wire fraud, you also would

12   then have a separate right to contest the forfeiture.

13   Do you understand that?

14             DEFENDANT CRUNDWELL:  Yes, sir.

15             THE COURT:  Is there anything at all that you

16   want me to explain further as it relates to the

17   criminal charge or the forfeiture?

18             DEFENDANT CRUNDWELL:  No, sir.

19             THE COURT:  And you've talked at length with

20   your attorneys about this; have you not?

21             DEFENDANT CRUNDWELL:  Yes.

22             THE COURT:  All right.  There is a plea

23   agreement that has been given to me --

24             MR. PEDERSEN:  Your Honor, I'm sorry to

25   interrupt.  You indicated as far as the forfeiture

1    allegation that there are numerous items that she's

2    agreeing to forfeiture.  There's also -- she's also

3    agreed as part of the plea agreement to entry of a

4    forfeiture judgment --

5            THE COURT:  All right.

6            MR. PEDERSEN:  -- in the amount of

7    $53,740,394 as part of the plea agreement.

8            THE COURT:  That's just part of the plea

9    agreement.

10           MR. PEDERSEN:  Well, it was alleged as a part

11   of the indictment, too, that we were seeking a

12   forfeiture judgment.

13           THE COURT:  All right.  Do you understand

14   that, that you agreed to a judgment in the amount of

15   approximately $53 million?

16           DEFENDANT CRUNDWELL:  Yes, Your Honor.

17           THE COURT:  All right.  The plea agreement

18   that I have in front of me is 26 pages, 37

19   paragraphs.  It is dated today, signed by the U.S.

20   Attorney, by the Assistant U.S. Attorney here, and

21   it's signed by your attorneys.  And did you sign that

22   today?

23           DEFENDANT CRUNDWELL:  Yes, Your Honor.

24           THE COURT:  Prior to today, I take it, you

25   had seen a draft of this agreement?

1      DEFENDANT CRUNDWELL:  Yes, Your Honor.

2      THE COURT:  And have gone over it with your

3  lawyers.

4      DEFENDANT CRUNDWELL:  Yes.

5      THE COURT:  And you both read it and had it

6  explained to you by your lawyers?

7      DEFENDANT CRUNDWELL:  Yes, Your Honor.

8      THE COURT:  And did you understand it?

9      DEFENDANT CRUNDWELL:  Yes.

10      THE COURT:  Did anybody force you to sign

11  this plea agreement?

12      DEFENDANT CRUNDWELL:  No, Your Honor.

13      THE COURT:  This agreement, among other

14  things, has certain agreements that you have made

15  with the government as far as cooperation with

16  documents and other materials that you agreed to

17  disclose to them.  Is there anything in that

18  agreement that you think a government agent made to

19  you a promise that is not included in the plea

20  agreement?

21      DEFENDANT CRUNDWELL:  No, Your Honor.

22      THE COURT:  Now, if you plead guilty today,

23  you understand that eventually a sentencing hearing

24  will be set, that this is called a plea agreement

25  because there are certain agreements between yourself

1   and the government, but as far as the sentence in

2   this case and as far as the guidelines, which I'll

3   explain to you in a few minutes, I'm the one that

4   will ultimately sentencing you, that there's no

5   agreement as to what the sentence is.  And as to the

6   guidelines, even though your lawyer and the

7   government may agree on some guidelines, I have to

8   independently determine whether they're applicable.

9   Do you understand that?

10          DEFENDANT CRUNDWELL:  Yes, Your Honor.

11          THE COURT:  And in this case where you would

12  plead guilty, you cannot withdraw the plea of guilty

13  just because the government may recommend, your

14  counsel may recommend certain guidelines being

15  applicable, and they may agree, but I may not agree,

16  and as to the sentence, they may or may not agree

17  what the sentence ought to be in this case, but I'm

18  the one that's going to determine that.  I may not

19  following those recommendations, and they may not

20  agree.  All I'm asking you is, you understand that I

21  will make those decisions, and you cannot withdraw

22  the plea of guilty just because I don't follow your

23  counsels' recommendations or the government's

24  recommendation.  Do you understand that?

25          DEFENDANT CRUNDWELL:  Yes, Your Honor.

1          THE COURT:  There is an obligation that this

2     Court has to determine, and that is, upon a plea of

3     guilty whether there is a factual basis to support

4     the plea of guilty that would support a conviction

5     beyond a reasonable doubt, and I have to be submitted

6     facts that would convince me that the government, as

7     far as the factual basis that they have set forth in

8     the plea agreement, would meet those requirements.  I

9     have reviewed the factual basis which is set forth in

10    the plea agreement in Paragraph 6 beginning on Page 2

11    and continuing on to Page 5, and I have determined

12    from reading that that it does provide a factual

13    basis for the plea of guilty, but I want you to

14    answer my questions.

15          First, you've read that factual basis as

16    set forth in Paragraph 6 of the plea agreement.

17          DEFENDANT CRUNDWELL:  Yes, Your Honor.

18          THE COURT:  And do you have any dispute with

19    those facts?

20          DEFENDANT CRUNDWELL:  No, sir.

21          THE COURT:  You committed the crime as stated

22    in those -- in Paragraph 6; is that correct?

23          DEFENDANT CRUNDWELL:  Yes, Your Honor.

24          THE COURT:  Now, in Paragraph 7, which starts

25    on Page 5 and goes through into Page 8, there are

1 facts which you had stipulated to which we call

2 relevant conduct, and that is, those are facts that

3 you haven't been charged with but they're conduct

4 that I can consider at the time of sentencing.

5 You're aware of what's in Paragraph 7?

6          DEFENDANT CRUNDWELL:  Yes, sir.

7          THE COURT:  And do you have any dispute with

8 that?

9          DEFENDANT CRUNDWELL:  No, sir.

10          MR. PEDERSEN:  Your Honor, actually, she is

11 stipulating that she committed that as an additional

12 offense even though she was not charged with it --

13          THE COURT:  All right.

14          MR. PEDERSEN:  -- so, I guess it might be

15 considered relevant conduct, but it is actually a

16 stipulated offense.

17          THE COURT:  All right.  It is -- relevant

18 conduct uses conduct that is not charged, but it's

19 conduct that the Court may consider during the course

20 of a sentencing procedure, if it's relevant and it's

21 credible.  Now, in this case, Paragraph 7 constitutes

22 both relevant conduct, and you're stipulating to

23 conduct that is a criminal offense.  Do you

24 understand that?

25          DEFENDANT CRUNDWELL:  Yes, Your Honor.

1       THE COURT:  And that's what you intend.  Is

2  that right, counsel?

3       MR. GAZIANO:  Yes, sir.

4       THE COURT:  All right.  I'm going to just

5  briefly explain to you what happens assuming you

6  progress through this proceeding and, ultimately,

7  enter a plea of guilty and admission of facts which

8  would support a forfeiture.  The case then would be

9  set for sentencing hearing.  And at a sentencing

10  hearing, I first determine what the guidelines would

11  be in terms of criminal offense level and in terms of

12  any prior history that you have.

13            In the Federal System, we have a point

14  system, and that calculates, we're really looking at

15  two separate factors.  One, is the offense that you

16  committed, and the guidelines will consider all the

17  facts surrounding that offense, and there'll be

18  points that are assessed for the commission of the

19  offense and points which would be potentially

20  applicable as it relates to all the other

21  circumstances of the offense, such as the amount of

22  money that was fraudulently taken.  There's more

23  points in a $53,000,000 fraud than somebody who might

24  have defrauded $10,000, and that's how these points

25  are ultimately added up.  Do you understand that?

1    DEFENDANT CRUNDWELL:  Yes, sir.

2         THE COURT:  And you get points, good points

3    for accepting responsibility in a timely fashion,

4    which the government has said you're entitled to

5    today.  The other thing the Court will look at as far

6    as the sentencing guidelines will be any criminal

7    history that you may have for which points are

8    attributed to under the sentencing guidelines.

9              Once I found those, the total points on

10   each of those factors, then I go to a guideline

11   manual, and that guideline manual will present a

12   guideline range based upon the criminal offense,

13   conduct, and based upon any prior history.  That

14   advisory range that I reach is exactly that.  It's

15   advisory.  I can sentence you within the guidelines,

16   below the guidelines, or above the guidelines, so

17   long as the sentence is not over the statutory

18   maximum.  The Court will listen if there are

19   objections by either the government or by you to the

20   probation officer's calculation of those guidelines,

21   I will listen to those, and I will determine those.

22   I have no idea at this point what those guidelines

23   calculate to be other than what you've, the sides

24   have suggested that there are some points that they

25   agree upon, and there may be some disagreement.  But,

1   ultimately, I will make that determination and find

2   what are the guidelines.  Then, after that, I'll

3   determine what's the appropriate sentence in this

4   case using the statutory factors set forth in

5   Section 3553(a).  So, that's what will happen.  Do

6   you basically understand that?

7            DEFENDANT CRUNDWELL:  Yes, Your Honor.

8            THE COURT:  All right.  I'm going to now

9   going to advise you of your trial rights.  First of

10  all, you have the federal defender representing you,

11  and they are here to assist you, and they are here as

12  your lawyers, not just to have you plead guilty, but

13  if you wanted to go to trial, do you understand that

14  they would represent you at trial?

15           DEFENDANT CRUNDWELL:  Yes, sir.

16           THE COURT:  You also have entered a plea of

17  not guilty before the magistrate judge in this case.

18  You have a right to persist or continue in that plea

19  of not guilty and go to trial on that as well as the

20  allegation of forfeiture.  Do you understand that?

21           DEFENDANT CRUNDWELL:  Yes, sir.

22           THE COURT:  There are certain rights that you

23  would have if you selected a trial.  First of all,

24  you would be present at the trial.  You would be able

25  to see and hear all the government witnesses and

1  evidence that they present in the case.  Your lawyer

2  would have the opportunity to cross examine those

3  witnesses, and you would have a right to bring in any

4  witnesses in your own behalf.  You can use the

5  subpoena power of this court to do so.

6          You also have a right to testify in the

7  case, if you so desire, but nobody can force you.

8  You have a Fifth Amendment Right not to testify, and

9  even this Court cannot compel you to testify in the

10 case.

11          In addition to those rights, the

12 government has the burden to prove you guilty beyond

13 a reasonable doubt.  You have no burden in the case.

14 The Court would also advise you that you are presumed

15 to be innocent of the charges against you, and if

16 there were a jury trial, I would so inform the jury

17 that you are presumed innocent.  Those are the trial

18 rights that you have.  And as it relates to the

19 burden in this case, government has the sole burden

20 to prove you guilty beyond a reasonable doubt.  You

21 don't have to offer any evidence or testify.  You can

22 rely on the presumption of innocense.  Do you

23 understand all of your trial rights?

24          DEFENDANT CRUNDWELL:  Yes, Your Honor.

25          THE COURT:  There are two types of trial.

```
1   One is a bench trial, and that's a trial in front of
2   me only.  That's where I listen to all the evidence,
3   and I determine after listening to all the evidence
4   whether the government has proved its case beyond a
5   reasonable doubt.  If you choose that method of
6   trial, then you would have to give up your right to
7   trial by jury, your lawyer would have to agree to
8   that, the government would have to agree, and so
9   would I.  Do you understand what a bench trial is?
10          DEFENDANT CRUNDWELL:  Yes, sir.
11          THE COURT:  The other type of trial is a jury
12  trial, and that's where we bring in potential jurors
13  from this district and division.  I question them to
14  make sure that they would be fair and impartial to
15  you and the government.  If I felt that any juror
16  would not be fair, I would excuse that potential
17  juror for cause.  You and your lawyer have a right to
18  excuse up to ten jurors for any reason except based
19  on that juror's race or that juror's gender, and in
20  that way, you're able to participate in the jury
21  selection process.  In addition to that, you're
22  participating by your lawyer and the government
23  submitting questions that I would ask the jurors.
24          Once we have twelve jurors that I
25  believe are fair and impartial as to both sides, then
```

they're sworn in, and we conduct a trial, and the
jurors are the sole people who will determine your
guilt or innocence, I preside, and I rule on matters
of law, and if you're found guilty, I'm the one that
will sentence you, but your guilt or innocence would
be decided by a jury.  And at the end of the case,
the jurors go back in secret, all twelve of them, and
the only way you can found guilty is if all twelve
vote that you're guilty and sign the guilty verdict
and return that into open court.

             If all twelve vote that you're not
guilty and return that verdict into court, then you
cannot be tried again for this offense.

             If the jurors are split, some for
guilty, some for not guilty, and after a reasonable
amount of time has gone by and they still have not
been able to unanimously agree to a verdict, I could
declare a mistrial, and the government could elect to
try you over again.  Do you understand what a jury
trial is?

        DEFENDANT CRUNDWELL:  Yes, Your Honor.

        THE COURT:  Do you further understand if you
plead guilty, you give up your rights to a trial.
There is no trial, but there is a sentencing hearing.
Do you understand that?

1          DEFENDANT CRUNDWELL:  Yes.

2          THE COURT:  Now, if you plead guilty, there

3    are certain other rights that you give up after I

4    sentence you on appeal.  There is a process that

5    would follow in any criminal case where after I

6    sentence a person, if they haven't given up all their

7    appeal rights, they have a right to appeal to a

8    higher court who would review what I have done.  But

9    when you plead guilty, there are some issues that you

10   could not raise on appeal.  You cannot raise any

11   issue as it relates to any trial error that might

12   have occurred because there is no trial.  In addition

13   to that, any motion that could have been made or was

14   made prior to trial is waived so that there's no

15   right to appeal any such issue.  You can appeal the

16   sentence, my calculation of the guidelines, and any

17   other error that I might have made today or in any of

18   the proceedings that have occurred, but you can't

19   raise those items that I've just told you about.  Do

20   you understand that?

21          DEFENDANT CRUNDWELL:  Yes, Your Honor.

22          THE COURT:  All right.  You said that you

23   understand all of your rights as it relates to

24   criminal trial.  Is it your desire to give up those

25   rights?

1          DEFENDANT CRUNDWELL:  Yes, sir.

2          MR. PEDERSEN:  Your Honor, if I could just

3   interrupt.  I don't think the defendant was advised

4   of all the maximum penalties that she faces.

5          THE COURT:  That's right.  I was going to --

6   I usually do that earlier, but I'm glad you did that,

7   reminded me.

8               This is a Class C felony, and I must

9   advise you, of course, of the potential penalties,

10  and it carries a maximum penalty of imprisonment of

11  20 years.  And I'm telling you what the maximum is,

12  doesn't mean you will get the maximum, but I must

13  advise you, according to rules, what the maximum

14  penalties are.  So, the maximum penalty of

15  imprisonment is 20 years.  As I've told you, it is

16  one that is probationable.  In addition to that, the

17  offense carries a maximum fine of $250,000 or twice

18  the gross gain or gross loss resulting from the

19  offense, whichever is greater.

20              In addition to those penalties, the

21  Court would advise you that after any term of

22  imprisonment that I would sentence you to, you would

23  also be serving a period of time after imprisonment

24  which we call supervised release, and that is not

25  more than three years.  So that would be, you would

1   be serving that after any period of imprisonment.

2   And supervised release is like being on probation

3   except it follows sentence, and if you violated any

4   of the terms or conditions of your supervised

5   release, you could have it revoked, and I could

6   resentence you to another term of imprisonment.

7                  In addition to those penalties, the

8   Court would order restitution to any victims in this

9   offense, and I must assess you a statutory special

10  assessment of $100.  Anyone who is convicted of a

11  felony must pay that $100 special assessment.  So,

12  those are the penalties.  Are you -- do you have any

13  question about that?

14              DEFENDANT CRUNDWELL:  No.  No, sir.

15              THE COURT:  Now, as to your plea in this

16  case, is any -- has anybody forced you in any way to

17  plead guilty today if that's what you choose to do.

18              DEFENDANT CRUNDWELL:  No, Your Honor.

19              THE COURT:  And as to the giving up your --

20  of the forfeiture allegations, you understand that

21  you would have those same rights to a trial that you

22  have in the forfeiture and that you would be entitled

23  to all those rights and that you would be giving

24  those up and agreeing to a forfeiture in this case,

25  assuming you plead guilty.  Is that what you

1　understand?

2　　　　DEFENDANT CRUNDWELL:　Yes, sir.

3　　　　THE COURT:　And that's what you wish to do;

4　is that correct?

5　　　　DEFENDANT CRUNDWELL:　Yes.

6　　　　THE COURT:　All right.　As it relates to the

7　charge of wire fraud, which I have explained to you,

8　at this time do you plead guilty or not guilty?

9　　　　DEFENDANT CRUNDWELL:　Guilty.

10　　　　THE COURT:　And as to the forfeiture

11　allegation, which I have explained to you, at this

12　time do you admit or deny those allegations?

13　　　　DEFENDANT CRUNDWELL:　I admit.

14　　　　THE COURT:　All right.　Is there anything

15　else that either counsel would have to add at this

16　time that I should ask her, or are you prepared for

17　me to make my findings?

18　　　　MR. PEDERSEN:　No, Your Honor.　Not that I'm

19　aware of.

20　　　　MR. GAZIANO:　Make your findings, Your Honor.

21　　　　THE COURT:　All right.　Ms. Crundwell, since

22　you acknowledge that you are in fact guilty as

23　charged in the indictment and having the assistance

24　of able counsel, I will accept the plea of guilty.　I

25　will find that you -- I will also accept the plea

1   agreement, and I will find that you have been advised

2   of your rights, you understand them, the

3   consequences, and the possible punishment, and

4   persist in pleading guilty.  I will further find

5   there's a factual basis for the plea of guilty, and

6   the plea of guilty was made voluntarily and without

7   any threats or promises.  I'll make the same findings

8   as it relates to the forfeiture allegations.  I'm now

9   going to enter judgment of guilty on her plea and the

10  judgment of forfeiture.

11          The next thing that will happen is that

12  you will be interviewed by a probation officer

13  probably within the next two weeks, and she will ask

14  you questions about the offense, about your

15  background, and about any criminal history that you

16  may have.  If you were to materially misled or give

17  false answers, material answers to a probation

18  officer in this process, you could obstruct justice.

19  I advise all persons who plead guilty of this.  Mr.

20  Gaziano will be present during the course of that

21  interview with the probation office, so if you're

22  unclear about any question, just stop and ask for his

23  advice.

24          The defendant has been on, I take it, a

25  recognizance bond since the magistrate judge ordered

1    that some time ago.  Is that right, Mr. Gaziano?

2            MR. GAZIANO:  That's correct, Your Honor.

3            THE COURT:  And she would be, remain on that

4    bond pending a sentencing hearing; is that correct?

5            MR. PEDERSEN:  Well, Your Honor, once she's

6    entered a plea of guilty, the presumption is

7    detention unless she can show by clear and convincing

8    evidence that she's not a flight risk.  Based on the

9    amount that was taken, the defendant's age, the

10   length of the potential sentence that she's facing,

11   we believe that she does present a risk of flight,

12   and that in order for her to be released, she needs

13   to rebut that presumption by clear and convincing

14   evidence.

15           THE COURT:  Mr. Gaziano.

16           MR. GAZIANO:  Judge, thank you.

17               The government is correct.  18-1343 does

18   indicate that the presumption does switch.  The

19   burden is not an impossible burden.  I would call the

20   Court's attention to the follow factors:

21               Lee County or Northern Illinois is Ms.

22   Crundwell's home area.  It's where she's born and

23   raised.  Her relatives continue to live here.  She

24   has no place to fee.  She has no resources with which

25   to flee.  Had she wanted to flee, she would have done

1   so sometime shortly after April.

2              During the period of time between April

3   until today's date, I would assert to the Court that

4   Ms. Crundwell has, one, regularly maintained court

5   appointments; two, regularly maintained appointments

6   with us; and, three, has regularly and at a moment's

7   notice, met with government officials to assist and

8   cooperating in and help arrange the sale of numerous

9   assets, all with the hope of recouping some loss for

10  the City of Dixon.  She's worked hard with the

11  government, and I believe that the government would

12  even stipulate to the fact, that there have been

13  numerous meetings regarding this.  She did not have

14  to do that.

15             The Pretrial Services report which was

16  originally shown to the Court in April showed that

17  she's had no history of foreign travel and has no

18  passports.  She has had -- I believe Ms. Fegre from

19  the Pretrial Services office is here.  She would

20  indicate to the Court that there have been no

21  violations of any kind during the time of pretrial

22  release.  I think Ms. Crundwell is not a risk to

23  flee.  She's been a most cooperative client.  She's

24  been exceptional and all times and has worked to

25  encounter this matter on a timely basis.

1          THE COURT:  Thank you.

2              The Pretrial Services officer here,

3     would you step forward, please?  Identify yourself

4     for the record.

5          MS. FEGRE:  Yes, Your Honor.  Traci Fegre

6     with U.S. Pretrial Services.

7          THE COURT:  And as I understand it, you have

8     not been her direct supervisor, that she had been

9     supervised during the period of time that she's been

10    on release to this point in time by somebody, some

11    other probation -- Pretrial Services officer.

12         MS. FEGRE:  Yes, Your Honor.  I have been in

13    regular contact with that officer helping to

14    monitoring Ms. Crundwell, and they have reported that

15    she's been in compliance.  There's been no issues or

16    violations reported.

17         THE COURT:  Is there any reason that she or

18    you would change their recommendation?

19         DEFENDANT CRUNDWELL:  No, Your Honor.

20         THE COURT:  And you believe that she meets

21    the requirements of the statute for continued

22    release.

23         MR. FEGRE:  Yes, Your Honor.  We would not

24    recommend any changes to bond at this time.

25         THE COURT:  All right.  Thank you.

 1          MS. FEGRE:  You're welcome.

 2          THE COURT:  The Court reviewed the initial

 3     report which was, went back --

 4          MR. GAZIANO:  April.

 5          THE COURT:  -- did you say April of, was it

 6     of this year?

 7          MR. GAZIANO:  Yes.

 8          THE COURT:  I've reviewed that and listened

 9     to what the government has said.  I have plenty of

10     these cases that are financial fraud cases, and in

11     most, if not all the cases, unless some evidence can

12     be shown that rebuts what Mr. Gaziano has said here,

13     I think based upon what the probation -- Pretrial

14     Services officer has said, the defendant has met the

15     burden to show by clear and convincing evidence that,

16     one, she's not a potential danger to the public by

17     continued release, and, two, that there's no evidence

18     she is a flight risk, therefore, the government --

19     denying any motion by the government for her

20     incarceration at this time.

21               The next remaining item will be to set a

22     sentencing date.  Do we have a -- usually you've

23     talked with the probation office.  When can they, it

24     usually takes 90 days, when can they be finished and

25     ready?

1          THE CLERK:  February 14th.

2          THE COURT:  As both counsel know, I'm gone

3     quite a bit of the time during the winter being the

4     senior judge taking a reduced caseload.  I will be

5     back for a period of time around the 14th.  The

6     sentencing would have to be either within those two

7     or three days.  I'm going to look and see what dates

8     those would actually be.  I think I'm here on the 13,

9     14, 15, and 18th, but I think the 18th is a holiday.

10          THE CLERK:  That's correct.

11          THE COURT:  So, I'm going to ask you because

12     there may be things that you wish to prepare for

13     that's going to take longer than that, longer than

14     being ready on the 14th.

15          MR. PEDERSEN:  The government would be ready.

16     I would just advise the Court, let you know, at this

17     point we anticipate calling at least one witness in

18     regards to the dispute over the guideline

19     calculations on the money laundering.  Also, we

20     anticipate calling three or four witnesses in

21     aggravation as far as the Court's consideration of

22     the 3553(a) factors.

23          THE COURT:  Are you talking a half day then?

24          MR. PEDERSEN:  Yes.

25          THE COURT:  At most?

1    MR. PEDERSEN:  Yes.

2    THE COURT:  All right.

3     Mr. Gaziano, can you be prepared on one

4 of those dates that I gave?

5    MR. GAZIANO:  I just had a question.  When

6 would the presentence investigation be delivered to

7 us?

8    THE COURT:  That would be -- you'll have the

9 timetable before -- the normal timetable.

10    MR. GAZIANO:  I was just confused when she

11 said February 14th.

12    THE COURT:  That would be when I could set

13 the sentencing, and the report would be prepared

14 usually a month before that.

15    MR. GAZIANO:  Judge, our office is available.

16    THE COURT:  All right.  Let me, I have a

17 calendar in front of me, Jen, and I know I've already

18 set some sentencing matters for that week.  What day

19 looks best rather than Wednesday, the day, the first

20 day back.  How about the Thursday or Friday?

21    THE CLERK:  You currently have nothing

22 scheduled on Thursday, the 14th.  Friday, you have

23 one sentencing at 9:30.

24    THE COURT:  Let's do it on Thursday.

25    Do you want to do it at 9:00 o'clock or

1    would you prefer 1:30?

2         MR. GAZIANO:  Well, Judge, I would prefer

3    9:00 o'clock because if we're wrong in our estimate.

4         THE COURT:  Okay.  All right.  We will set

5    this matter for sentencing on the 14th; is that what

6    you said, Jen?

7         THE CLERK:  Yes.

8         THE COURT:  At 9:00 o'clock.  Obviously, I

9    will expect that the probation office finishes the

10   Presentence Investigation Report.  They usually do it

11   at least a month before that time, not longer.  And

12   they'll be deadlines for objections and for response

13   to any objections.  Make sure those are timely.  I

14   don't want to have to continue this.  It's my usual

15   practice is not to continue a sentencing hearing

16   unless during both your evaluations there's a problem

17   that you both jointly think there ought to be a

18   continuance.  Then I'll consider that.

19         All right.  Is there anything else at

20   this time?

21         MR. PEDERSEN:  No, Your Honor.

22         MR. GAZIANO:  No, Your Honor.

23         THE COURT:  I'm going to advise the defendant

24   that I've allowed you to remain out on the same bond

25   that you were on under the same conditions that the

1    magistrate judge set.  You're to report, and you're

2    under those same conditions.  Make sure you don't do

3    anything that would jeopardize that or being in

4    violation of the magistrate judge's order allowing

5    you to be released.

6              So, with that, I have nothing more in

7    this case.  We'll see you on the 14th.

8              MR. GAZIANO:  Thank you, Your Honor.

9              MR. PEDERSEN:  Thank you.

10              THE COURT:  That's all.

11              I've got another case that begins in

12    five minutes.  I'm going to take a recess, and then

13    we will proceed with that.

14                        (Which were all the proceedings

15                         had in the above-entitled cause

16                         on the day and date aforesaid.)

17

18     I hereby certify that the foregoing is a correct

19    transcript from the record of proceedings in the

20    above-entitled matter.

21

22

23              _____

24              Susan G. Bloom, CSR
                No. 084-001546

25