IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | |
| | ) | |
| RITA CRUNDWELL | ) | Case No. 12 CR 50027 |

**Response to Government Sentencing Memorandum and
Crundwell Sentencing Memorandum**

Comes now Rita Crundwell by the Federal Defender Program, Carol A. Brook Executive Director and Paul E. Gaziano one of her assistants and provides the Court with a Response to the Government's Sentencing Memorandum and A Sentencing Memorandum

**Background**

Ms. Crundwell is before the Court for sentencing after pleading guilty to one count of wire fraud in violation of 18 U.S.C.§ 1343, a crime which carries a maximum sentence of 20 years' imprisonment. This is a Class C felony. 18 U.S.C.§ 3559 (a) (3).

Ms. Crundwell entered her plea of guilty on November 14, 2012 after having entered into a plea agreement with the government. As part of that plea agreement, Ms. Crundwell also stipulated to the commission of the offense of Money Laundering in violation of 18 U.S.C.§ 1956.

Ms. Crundwell was the comptroller of the City of Dixon, Illinois (Dixon). She served in that position for a number of years. Ms. Crundwell was able to use that position to obtain control of in excess of fifty-three million dollars belonging to the Dixon. Over the period of time that she diverted funds from Dixon, Ms Crundwell used those funds for her personal expenses and to expand her business relating to the raising, training, and marketing of horses. Ms. Crundwell at the time of her arrest had approximately 400 horses located in various locations in the country.

The process by which Ms. Crundwell was able to obtain the funds was not extremely complicated. She created an account at a local bank. That account was named the RSCDA account ( Reserve Sewer Development Account). That account appeared to be a Dixon account, but Ms. Crunwell was the only signatory and the only person who negotiated checks from that account. Ms. Crundwell would cause Dixon funds to be deposited into another account, the Capital Development Fund and after creating false invoices she would write checks from that fund payable to Treasurer and deposit those checks into the RSCDA account for distribution for her own purposes.

Ms. Crundwell has acknowledged that this scheme went on for a long period of time and that she is the only person responsible for this conduct.

**Sentencing Issues**

**The Sentencing Guidelines**

The probation office has determined the sentencing guideline range as follows:

Crime of conviction

    Base Offense Level–2B1.1                  7
    Specific Off Char–   2B1.1(b) (1)(M)   24
    Specific Off Char–   2B1.1(b) (10)©)   2
     Abuse of Trust–     3B1.3              2
    Adjusted Off. Level                     35
Stipulated Conduct
    Offense level         2S1.1            35
    Specific Off. Char.   2S1.1 (b)(2)(b)   2
    Adjusted Off. Level                     37

 By applying the higher adjusted offense level (37) and granting Ms. Crundwell the three points for acceptance of responsibility [see 3E1.1 (a) and (b)], the total offense level is 34. Ms. Crundwell due to her lack of prior convictions is placed in criminal history category I which results in a guideline sentencing range of 151-188 months imprisonment.

The government has agreed to those calculations. (Govt. Sen. Memo. 3-4).

Ms. Crundwell agrees with those calculations and offers no objection .

**Sentencing Procedure**

Ms. Crundwell will not detail the background of the sentencing procedure in Federal Court, in that this Court is very familiar with that procedure. Simply stated, the sentencing court must first correctly calculate the sentencing guidelines applicable to the case. The court is then to consider the factors set forth in 18 U.S.C.§ 3553(a) and in applying those factors impose a reasonable sentence. See, generally Gall v. United States, 128 S.Ct. 586, 596(2007).

In its sentencing memorandum, the government adopts the calculations set forth in the PSI, but asks the court to either depart upwards from the sentencing guidelines or to enter a sentence which varies from the sentencing guidelines. Ms. Crundwell does oppose that request and submits that a sentence at the low-end of the guideline range as determined in the PSI is a reasonable sentence.

**18 U.S.C. § 3553(a)**

Ms. Crundwell recognizes that the sentencing guidelines are not mandatory.  The only mandate to a district court in imposing a sentence is set forth in 18 U.S.C. §3553(a) which states in pertinent part: " The court shall impose a sentence sufficient but not greater than necessary to comply with the purposes of paragraph 2."  This statement is not a sentencing factor; this statement establishes a cap beyond which a sentencing court may not exceed.  This statement is referred to as the parsimony provision.  The court by operation of that provision shall not impose a sentence greater than necessary to serve the several purposes of the sentencing factors set forth in paragraph 2 of §3553.

The sentencing factors of 3553 may be summarized in four headings: incapacitation, rehabilitation, deterrence (individual and society), and justice.  In analyzing those headings, the court should bear in mind the crime (nature and circumstance), the history and characteristics of the person to be sentenced, the consequences of conviction and the need to protect the public from the person (incapacitation).

The government requests or argues for a sentence in excess of that advised by the guidelines.  The government suggests that the court average the departure or variance given in  other cases and by applying that average impose a sentence 4 levels greater than that advised by the guidelines. Such a result would require a

sentence at the statutory maximum. The argument put forth by the government does not follow the process of either the guidelines or 18 U.S.C.§ 3553.

The court must begin with the statutory mandate that the sentence imposed be no greater than that which is necessary to fulfill the purposes of paragraph 2 of the statute.

### Nature and Circumstances of the crime

The nature a circumstances of the offense are set forth in the plea agreement and the PSI. Ms. Crundwell over a long period of time stole from Dixon approximately fifty-three million dollars. She was able to accomplish this crime by abusing the trust placed in her as the comptroller of Dixon That crime harmed the Dixon by depriving it of funds with which to carry out its function as a municipal government. Ms Crundwell was able to use that money to further her horse business, amass assets and pay numerous personal expenses. Ms. Crundwell does not intend to diminish the acknowledged seriousness of her crime in this synopsis. Ms. Crundwell recognizes that the people of Dixon feel betrayed, bewildered and vengeful for her crime.

In weighing the nature and circumstances of her crime, the court must consider that the sentencing guidelines have significantly impacted Ms. Crundwell's sentencing range. She has not disputed a 24 level increase based upon loss. She has not disputed increases in offense level based upon abuse of trust, and sophisticated means. In effect, the amount of loss alone has raised her sentencing guideline range from 6 months' imprisonment to 9 years' imprisonment. ( Level 7 to Level 31). The amount of loss calculation, it is submitted accounts for the deprivation of the use of those funds and that the government has not justified an variance or departure on the basis of the loss alone.

### The Individual

The court must also consider the individual who is to be sentenced. Before the bar of this court is a 60 year old woman who, if the government's requested sentence is imposed, will most likely spend the rest of her life in prison. That result violates the parsimony provision of 18 U.S.C.§ 3553. While this crime and the results of this crime are serious, no violence was used or contemplated. A sentence at the low-end of the guideline range as determined in the PSI is sufficient, but not greater than necessary to achieve the purposes of §3553(a).

#### A. Post-Arrest Conduct

Ms. Crundwell admitted her guilt. She did so on November 14, 2012. She did so when she first met Special Agent Garry of the FBI in April 2012. Shortly

thereafter in proffer protected statements ( a condition requested by her counsel). Ms. Crundwell continued in those admissions. Ms. Crundwell assisted the government in investigating this matter by quickly admitting that she was the only one who was involved; she assisted in the marshaling of assets to be seized to accomplish a level of restitution; she assisted in the disposition of those assets and she continues to cooperate with the government. It is anticipated that Ms. Crundwell will be supplying the court with several affidavits relating to this issue.

The cooperation of Ms. Crundwell has been extraordinary. She has from shortly after her initial appearance to the present time made herself available to the FBI, the United States Marshal Service, and the United States Attorney. Those meetings resulted in Ms. Crundwell assisting those agencies in promptly, efficiently and at less expense obtaining a sizable amount in restitution for Dixon. Ms. Crundwell does not suggest that her post-arrest conduct diminishes her wrongdoing; she does submit that the conduct did assist the government to a great extent in its efforts to conclude this investigation and to achieve a higher level of restitution to Dixon.

Ms. Crundwell's post-arrest conduct should not be lightly dismissed. That conduct establishes that she has significantly begun the rehabilitative process. In *Roberts v. United States*, 100 S. Ct. 1358, 1363 the court affirmed a sentence imposed in part because Roberts had refused to cooperate with the authorities. In commenting on the cooperation of a defendant, the court stated: "Few facts available to a sentencing judge are more relevant to the 'likelihood that ( a defendant will transgress no more, the hope that he will respond to rehabilitative efforts to assist with a lawful future career and the degree to which he does or does not deem himself at war with society.'"

Ms Crundwell immediately began the rehabilitative process. She signed a waiver of her right to counsel, she signed a written statement, she began meeting with the authorities shortly after her initial appearance and continued to do so on a frequent basis. Those meetings were conducted for the most part in the Rockford FBI office, often scheduled on a short notice basis. Ms. Crundwell appeared, provided the information requested, often supplying the agents her expertise , knowledge and understanding of the horse business.

**B. Collateral Consequences of Ms. Crundwell's Conviction and Conduct**.

In assessing the statutory factors, the court is free to consider the collateral consequences arising from the conviction of the crime. Doubtless, Ms. Crundwell will spend a significant time in prison and upon her hopeful release a significant time on supervised release. This court will impose a judgment of restitution which will inure to the benefit of Dixon. That judgment will remain in effect for the rest of Ms. Crundwell's life. Those are the direct consequences of her crime.

Ms. Crundwell faces criminal charges in Lee County, Illinois which arise from the same conduct. She faces multiple class X felony charges. Defense counsel is not sure what will happen to those charges, but they are present and constitute a possible area of further penal punishment.`

As a collateral consequence of the conviction in this case, all of Ms. Crundwell's assets are subject to seizure or forfeiture. Much of her property has already been taken and it is hoped by all parties that a significant amount of restitution can be made to Dixon. Ms. Crundwell's IMRF pension will undoubtedly be forfeited. Ms. Crundwell has met with the United States Attorney Office to arrange for the delivery of her contributions to that pension and other assets to satisfy restitution. Ms. Crundwell will be shortly turning over and or assigning to the government her interest in an account which is similar to a 401(k); she will assign to the government two notes payable in her favor from two Dixon administrators who had borrowed money from her; and she will be turning over to the government another check which is payable to her in an amount in excess of $5000.00. In effect this will leave Ms. Crundwell with no assets.

Counsel appreciates that Ms. Crundwell does owe significant restitution. Counsel believes that Dixon will receive a good sum for restitution in the near future. Ms. Crundwell in accord with the plea agreement has met with the government attorneys. The most recent meeting was on February 4, 2013. Ms. Crundwell has detailed what if anything remains of her assets. She has also met with the government attorneys to respond to questions regarding specific transactions in which she was involved.

Ms. Crundwell now suffers the consequences of a felony conviction. Her felony conviction because of the nature of the crime has brought to her nationwide disrepute and shame. The brand of a felon will always be upon Ms. Crundwell. That shame and disrepute will follow her the rest of her days.

**The Need for Incapacitation or Deterrence**

One of the factors which the Court must consider is the future safety of the public. That is another way of saying must Ms. Crundwell be incarcerated for a longer period of time to protect the public from future crimes . Ms. Crundwell will never be in a position to commit this type of crime again. Undoubtedly, she will not be in a position of trust for any future employer and a properly crafted mandatory supervised release order can prevent her from having any further employment in which she has access to funds.

Ms. Crundwell's otherwise clear record of no contact with law enforcement or the judicial system is an indication that she will not commit further crimes. Therefore, she need not be physically incapacitated longer on this basis.

Ms. Crundwell recognizes that she must be incarcerated, however, the sentencing guidelines suggest the proper sentencing range and a sentence at the low end of the range is more than sufficient to provide for the deterrence of others.

Ms. Crundwell has begun the rehabilitation process by her extraordinary cooperation. She has established that she can abide by the terms of the orders of this court and she has established her concern and remorse by her assistance in the restitution process.

**A Variance or Departure from the Guidelines is not necessary**

The government now seeks an upward variance or departure.[1] Ms. Crundwell submits that a sentence within the guideline range is appropriate. Ms. Crundwell submits that a upward variance or departure is not required under the facts of this case.

Reliance by the government on United States v. Pabey, 664 F3d 1084 (7th Cir. 2011) is misplaced. In that case, the elected mayor of East Chicago was found guilty by a jury of various crimes relating to his duties as mayor and the misapplication of funds and resources of East Chicago. Pabey, unlike Ms. Crundwell, was convicted following a trial. Mr. Pabey did not admit his guilt, did

---

[1] Ms. Crundwell does appreciate the difference in terminology. The government has suggested that the terms are synonymous. In light of the recent amendment to §1B1.1 and the consideration set forth therein, the terms while related are not synonymous.

not participate in lengthy meetings with government agents to assist in the completion of the investigation, the marshaling of assets and the disposition of those assets. Indeed, Mr. Pabey refused to acknowledge his participation in the crime of conviction and caused others to perjure themselves at the time of trial. The factual background of Pabey is completely different from this case that if offers no support for the sought for variance or departure.

East Chicago as described in the *Pabey* opinion is a much different community than Dixon. Id at 1098. Undoubtedly, Dixon suffered as a consequence of Ms. Crundwell's crime. However, that result in and of itself does not require the application of an upward departure pursuant to 5K2.7 U.S.S.G. and does not support a variance under the factors set forth in 18 U.S.C.§3553(a).

**2B1.1 U.S.S.G. does not substantially understate the offense**

Application Note 19 of 2B1.1 U.S.S.G., states: There may be cases in which the offense level determined under this guideline substantially understates the seriousness of the offense. Where the guideline substantially understates the offense, a departure may be warranted.

Ms. Crundwell submits that 2B1.1 does not substantially understate the offense. The guidelines take into consideration her position of trust and the abuse of that trust. The guidelines take into consideration the method in which the theft of funds occurred. The guidelines take into consideration the loss which occurred to Dixon. While the loss of money to the Dixon was significant, that loss and the consequences of that loss are properly factored in the sentencing guidelines . The amount of loss and the corresponding unavailability of those funds for muncipal use do not support a variance or a departure from the guidelines.

**Summary**

Ms. Crundwell has no objection to the calculations of the Sentencing Guidelines as set forth in the PSI. She is not requesting a variance or departure from those calculations. Ms. Crundwell requests a sentence at the low-end of those guidelines. Ms. Crundwell submits that a sentence at that range is sufficient but not greater than necessary to achieve the purposes of 18 U.S.C. § 3553 (a).

Her conclusion is based upon her remorse for the commission of the crime

as established by her acknowledgment of guilt and her prompt, early cooperation with the government in the process which followed her arrest. Her age, her lack of record and the collateral consequences of her conviction establish that she is unlikely to commit future crimes and that her long term incarceration is not mandated. A sentence at the low-end of the guidelines is appropriate and sufficient but not greater than necessary to achieve the purposes of 18 U.S.C. §3553.

     Ms. Crundwell does request that this Honorable Court recommend to the Bureau of Prisons that she be placed in an appropriate facility closest to the Beloit, Wisconsin area and that she be allowed access to a camp facility at the earliest time feasible.

Dated this 4th day of February, 2013 in Rockford, Illinois.

                                            Respectfully submitted:
                                            FEDERAL DEFENDER PROGRAM
                                            Carol A. Brook
                                            Executive Director

                                            By: ____/s/_____
                                                 Paul E. Gaziano
                                                 Attorneys for Defendant

PAUL E. GAZIANO
FEDERAL DEFENDER PROGRAM
202 W. State Street - Suite 600
Rockford, IL 61101
(815) 961-0800