UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 12CR 50027 |
| ) | Judge Phillip G. Reinhard |
| RITA A. CRUNDWELL ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, GARY S. SHAPIRO, United States Attorney for the Northern District of Illinois, responds to defendant's sentencing memorandum as follows:

**BACKGROUND**

In the plea agreement, defendant pleaded guilty to wire fraud as charged in the indictment and stipulated to committing money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). R. 45, ¶¶ 6-7.[1]  Defendant faces a maximum term of imprisonment of 20 years. 18 U.S.C. §1343. The PSR has calculated defendant's total offense level for the wire fraud conviction and money laundering stipulated offense as 37. PSR at 26, 41. The PSR also includes a three level reduction pursuant to Guideline §§ 3E1.1(a) and(b), resulting in a total offense level of 34 and a Guidelines range of imprisonment of 151-188

---

[1] All citations to the record are denoted "R" and followed by the applicable document number. All citations to the Pre-Sentence Investigation Report are denoted "PSR" and followed by the applicable paragraph number.


months. PSR at 43-45. The government agrees with the Guidelines calculations contained in the PSR.

## DISCUSSION

Defendant has filed a sentencing memorandum requesting a sentence at the low end of the Guideline range of 151-188 months imprisonment. R.54.[2] Specifically, defendant argues that the nature and circumstances of the offense, the collateral consequences of defendant's conviction and conduct, and the need for incapacitation or deterrence all weigh in favor of a sentence at the low end of the Guidelines range. M. 4-7. Defendant argues that such a sentence is sufficient but not greater than necessary to achieve the purposes of 18 U.S.C. § 3553(a). M. 8. Defendant opposes the government's request for an upward variance. *Id.* at 7-8.

### A. Nature and Circumstance of the Offense

Defendant states that the increase in offense level due to amount of the loss included in the Guidelines calculations adequately accounts for the depravation of the use of funds by the City of Dixon and that the government has not justified a variance or departure on the basis of the loss alone. M. 4. As set forth in the government's motion for upward variance, the government is not

---

[2] All references to defendant's sentencing memorandum are denoted "M." followed by the applicable page number(s).

arguing for an upward variance based on the amount of the loss alone. R. 52.[3] In support of its argument that the nature and circumstances of the offense warrant an upward variance, the government discussed the defendant's actions in deceiving City of Dixon officials regarding the reason for the City's budget problems, her use of the fraud proceeds to live a lavish lifestyle while at the same time participating in budgeting meetings and telling City officials that painful budget cuts were necessary, the 20 year length of the scheme, and the elaborate steps that defendant took to prevent the detection of her fraud scheme including creating 159 fictitious invoices to justify expenditures from the Capital Development Fund. G. 4-7.

 Defendant argues that her post-arrest conduct warrants a sentence at the low-end of the Guidelines range. M. 4-5. Specifically, defendant's counsel asserts that she admitted her guilt when she first met Special Agent Patrick Garry of the FBI on April 17, 2012. M. 4. Defendant's counsel further states that defendant immediately began the rehabilitative process in that she waived her right to counsel, signed a written statement, began meeting with the authorities shortly after her initial appearance and continued to do so on a frequent basis. M. 5. However, when FBI Special Agents Patrick Garry and

---

[3] All references to the government's motion for an upward variance are denoted "G." followed by the applicable page number(s).

Daniel Cain first met with defendant on April 17, 2012, Special Agent Garry told defendant that the FBI was aware of the RSCDA account and showed defendant copies of bank statements for that account. Special Agent Garry told defendant that the FBI already knew that defendant had taken a substantial amount of money from the City of Dixon. Special Agent Garry told the defendant that there was no question that defendant had taken the money from the City of Dixon and that the only question was why she had done it. Defendant then waived her right to remain silent and answered questions from Special Agents Garry and Cain. Defendant signed a written statement regarding her theft of funds from the City of Dixon. In her statement, defendant stated that she opened the RSCDA account for the sole purpose of diverting money belonging to the City of Dixon to herself. *Id.* Defendant stated that she first started taking money from the City of Dixon in 1999 or 2000. *Id.* In fact, the defendant's fraud scheme started ten years earlier, in December 1990, when she opened the RSCDA account. Defendant further stated that she believed she may have taken $10 million during the course of her fraud scheme. Defendant has now admitted in her plea agreement that she took over $53 million in City of Dixon funds between 1991 and 2012. R. 45.

The government is not contesting that defendant has accepted responsibility by pleading guilty. R. 45. However, while defendant did make

4

admissions regarding her fraud scheme when first interviewed by Special Agent Garry on April 17, 2012, her admissions came only after she was informed by the FBI that her scheme had been exposed. Prior to defendant's arrest, she took over $330,000 in the month of March and a total of $1.5 million in the first three months of 2012. G. Ex. 5. There is no evidence that defendant had any intention of ending her scheme to defraud the City of Dixon prior to April 17, 2012, when she was confronted by the FBI. Also, while defendant admitted to stealing money from the City of Dixon when confronted by the FBI, she minimized the amount of the money she took and the length of the scheme. These facts do not support her contention that she immediately began the rehabilitative process and do not weigh in favor of a sentence at the low end of the Guidelines.

Defendant states that after her arrest she cooperated in the marshaling and sale of her assets. M. 5. Defendant argues that her cooperation has been "extraordinary" and that it warrants a sentence at the low end of the Guidelines range. M. 5. The government does not contest that defendant has cooperated with the marshaling and sale of her assets, particularly with the disposal of her horses and that her cooperation aided in the recovery of additional funds that the government will seek to have applied to restitution. However, the government took defendant's cooperation into consideration when it agreed to

5

allow defendant to plead guilty to a single count of wire fraud as part of a plea agreement. The government's decision not to file additional wire fraud or money laundering counts effectively capped defendant's sentence at 20 years' imprisonment. It is the government's position that defendant deserves no further consideration for her cooperation in relation to the disposition of the assets she acquired with proceeds of the fraud. The defendant's cooperation in converting the assets such as the horses and the $2 million motor home back into funds that can be available for restitution was necessary because of defendant's scheme to defraud the City of Dixon. Defendant was merely returning proceeds that did not belong to her. While her cooperation in relation to the recovery of funds belonging to the City of Dixon warrants consideration by the Court, it does not warrant the 12 and ½ year sentence that defendant has requested.

    **B.    Collateral Consequences of Defendant's Conviction and Conduct**

Defendant also asks the court to take into consideration the collateral consequences of her conviction and conduct. M.6-7. Included in those consequences, defendant discusses her pending charges in Lee County, Illinois which arise from the same conduct. M. 6. Defendant asks the court to consider that the pending charges against defendant in Lee County arising from the same conduct for which defendant was convicted in this case may subject defendant

6

to additional penal punishment. M. 6. It is true that by statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Under section 3553(a), the court is required to consider, among other things, the history and characteristics of the defendant and may "appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it might come." *United States v. Vitrano*, 495 F.3d 387, 390 (7th Cir.2007) (quoting *United States v. Nowicki*, 870 F.2d 405, 406 07 (7th Cir.1989)). However, here, defendant states that there is a possibility of additional punishment as a result of the pending state charges, but does not state the likelihood or amount of additional punishment defendant faces as a result of the Lee County charges. Therefore, the pending charges should not be used as a reason to impose a lower sentence.

  Defendant also argues that as a collateral consequence of her conviction, all of her assets are subject to seizure or forfeiture. M. 6. The government expects that after the sale of defendant's assets and the subtraction of the sales expenses, there will be a net amount of approximately $10 million that is subject to forfeiture. The government will move that the $10 million be returned to the

7

City of Dixon as restitution as part of the remission process. While defendant will likely be left with no assets, the victim in this case will likely be owed over $40 million in restitution even after all of defendant's assets are sold.

The collateral consequences of defendant's conviction and conduct that defendant argues weigh in favor of a sentence at the low end of the Guidelines range all relate to consequences that affect her, such as the damage to her reputation. M.6. However, defendant summarily dismisses the government's argument for an upward variance based on the non-monetary harm and significant disruption of governmental function to the City of Dixon caused by defendant's fraud scheme. M. 7-8. As the government has argued in its motion for an upward variance, defendant's conduct caused significant non-monetary harm[4] and disruption of a governmental function.

Defendant attempts to distinguish one of the cases cited by the government in support of an upward variance, *United States v. Pabey*, 664 F.3d 1084 (7th Cir. 2011), from defendant's conduct, by the fact that Pabey was convicted after trial and defendant pleaded guilty. However, in the two other cases cited by the government in support of its argument for an upward variance

---

[4]Defendant argues briefly that Guideline § 2B1.1 does not substantially understate the seriousness of the offense and that the Guidelines adequately take into account the amount of loss and the effect of the loss of funds on the City of Dixon. M. 8. In response, the government relies on its argument set forth in its motion for an upward variance. G. 8-14.

8

for disruption of governmental function, *United States v. Paulus*, 419 F.3d 693 (7th Cir. 2005) and *United States v. Gunby*, 112 F.3d 1493 (11th Cir. 1997), both defendants pleaded guilty and the court varied upward by at least 4 levels for their disruption of a government function. *See Paulus*, 419 F.3d at 696-699 (finding that the court did not err in departing upward and increasing defendant's offense level by six levels based, in part, on the fact that defendant's conduct of accepting bribes as a state prosecutor in exchange for leniency on criminal cases he prosecuted caused a significant disruption of government function pursuant to Guideline § 5K2.7); *Gunby*, 112 F.3d at1494, 1500 (court found that defendant's conduct caused a significant disruption of a governmental function and increased defendant's offense level by 4 levels where defendant pleaded guilty to mail and tax fraud relating to his embezzlement of $400,000 in filing fees over a five year period from a county magistrate court over which he presided). Therefore, the fact that defendant pleaded guilty does preclude an upward variance for the non-monetary harm and disruption of governmental function caused by her conduct.

In addition, defendant has not addressed the government's argument that her conduct caused a loss of public confidence by the citizens of Dixon in their elected officials. M. 8. Rather, defendant acknowledges that the City of Dixon suffered as a result of her crime, but argues that no departure or upward

9

variance is warranted. M. 8. For the reasons set forth above and in the United State's Motion for Upward Variance, the government submits that the court should vary upward from the Guidelines range based on the non-monetary harm and disruption of governmental function caused by defendant's conduct.

### C. The Need for Incapacitation or Deterrence

In arguing for a sentence at the low end of the Guidelines, defendant cites the fact that she has a clear record of no contact with law enforcement or the judicial system as an indication that she will not commit future crimes. M. 7. However, while defendant has no prior convictions, she engaged in the scheme to defraud in this case on a continuous basis for over 20 years. As argued in its motion for an upward variance, defendant's conduct involved not only taking the money, but also going to elaborate steps to prevent detection. G. 7-8. Further, defendant provided false information to City officials regarding the reasons for the budget shortfalls and sat silent as painful cuts to the City's budget were made. In addition, the fact that defendant has no prior criminal history is taken into account by the Guidelines in calculating the sentencing range.

## CONCLUSION

For the reasons set forth above and in the United States Motion for Upward Variance, the United States respectfully moves that this court vary upward from the Guidelines range by adding at least four levels to defendant's total offense level.

                              Respectfully submitted,

                              GARY S. SHAPIRO
                              United States Attorney

                              By:      /s Joseph C. Pedersen
                                    JOSEPH C. PEDERSEN
                                    Assistant United States Attorney
                                    327 South Church Street
                                    Suite 3300
                                    Rockford, Illinois 61101
                                    815-987-4444

# CERTIFICATE OF FILING AND SERVICE

I, JOSEPH C. PEDERSEN, certify that on February 8, 2013, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

were served pursuant to the district court's ECF system as to ECF filers.

                                                /s Joseph C. Pedersen
                                          JOSEPH C. PEDERSEN
                                          Assistant United States Attorney
                                          327 South Church Street - Suite 3300
                                          Rockford, Illinois 61101
                                          815-987-4444